Electronically Filed
Intermediate Court of Appeals
29675
10-JUN-2015
11:49 AM

NO. 29675

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


PAULETTE KA'ANOHIOKALANI KALEIKINI, Plaintiff-Appellant, v.
SUZANNE CASE, in her official capacity as Chairperson of the
Board of Land & Natural Resources,[1] BOARD OF LAND & NATURAL
RESOURCES, the DEPARTMENT OF LAND & NATURAL RESOURCE O'AHU ISLAND
BURIALS COUNCIL, GGP LIMITED PARTNERSHIP, VICTORIA WARD, LIMITED
and GENERAL GROWTH PROPERTIES, INC., Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-0067)


ORDER DISMISSING APPEAL
(By: Nakamura, C.J., and Foley and Leonard, JJ.)

On April 6, 2015, Plaintiff-Appellant Paulette
Ka'anohiokalani Kaleikini (Kaleikini); Defendants-Appellees GGP
General Growth Properties, Inc., GGP Limited Partnership, and
Victoria Ward, Limited (collectively, GGP Appellees); and
Defendants-Appellees Suzanne Case, in her official capacity as
Chairperson of the Board of Land and Natural Resources, the Board
of Land and Natural Resources (BLNR), the Department of Land and
Natural Resources (DLNR), and the O'ahu Island Burial Council
(OIBC) (collectively, the State) each filed a response to this

---

[1]  Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule
43(c)(1), Suzanne Case has automatically been substituted as a party.

court's March 27, 2015, Order to Show Cause. Upon consideration of (1) the parties' responses to the Order to Show Cause; (2) Kaleikini's "Motion to Allow the Filing of Her Opening Brief, or To Brief the Issue of Mootness" filed on May 22, 2015; and (3) the record and files in this case, we conclude, for the reasons discussed below, that this appeal is moot. We therefore dismiss the appeal on the ground of mootness.

I.

A description of the facts underlying this case is set forth in Kaleikini v. Thielen, 124 Hawaiʻi 1, 237 P.3d 1067 (2010), a related appeal decided by the Hawaiʻi Supreme Court. While conducting an archaeological inventory survey at the site of their Ward Village Shops construction project (Project), the GGP Appellees discovered and identified eleven sets of Native Hawaiian burial remains or iwi. Over Kaleikini's opposition, the OIBC approved a burial treatment plan that provided for the relocation of the previously identified iwi. Kaleikini requested a contested case hearing of the OIBC's decision to relocate the iwi, which was denied by the Chairperson of the BLNR. On January 10, 2007, Kaleikini filed a notice of agency appeal with the circuit court (Contested Case Action), seeking review of the BLNR Chairperson's denial of her request for a contested case hearing. On the same day, Kaleikini filed the action underlying this appeal (Instant Action), seeking declaratory relief and an injunction to prevent the imminent removal of iwi from the Project site.

In addition to the discovery of the eleven previously identified burials, another 54 burials, classified as "inadvertently discovered," were located on the Project site. The DLNR determined that 31 of these inadvertently discovered burials would be preserved in place and the remaining 23 would be relocated.

On October 27, 2007, Kaleikini filed her Second Amended Complaint for declaratory and injunctive relief in the Instant

2

Action, which asserted seven counts.[2] On March 19, 2008, the Circuit Court of the First Circuit (Circuit Court)[3] filed its Order Granting in Part and Denying in Part the [State's] Motion for Summary Judgment. The Circuit Court granted summary judgment on Counts 1 through 4 and denied summary judgment on Counts 5, 6, and 7. On April 30, 2008, Kaleikini, the GGP Appellees, and the State entered into a Settlement Agreement. Pursuant to the Settlement Agreement, the parties agreed that both previously identified and inadvertently discovered burials would be reinterred at a Central Burial Preservation Site or at other specific reburial sites as set forth in an addendum to the burial treatment plan. As part of the Settlement Agreement, Kaleikini agreed to dismiss Counts 5, 6, and 7 and her prayers for injunctive relief and to release the State and the GGP Appellees from all claims arising out the Instant Action, except that Kaleikini retained the right to pursue an appeal of the Circuit Court's grant of summary judgment on Counts 1, 2, 3, and 4.

---

[2] The Second Amended Complaint alleged the following: (1) The BLNR Chairperson's denial of Kaleikini's request for a contested case hearing is invalid (Count 1); (2) The disinterment of Native Hawaiian burials adversely affects Kaleikini's native Hawaiian rights and violates Article XII, § 7 of the Hawai'i Constitution (Count 2); (3) The OIBC's "failure to render findings, investigate alternatives and require the developer to explore alternatives is a breach of its public trust responsibilities" (Count 3); (4) The OIBC's "decision to remove the burials was not narrowly tailored given its failure to consider alternatives" (Count 4); (5) "The disinterment of Native Hawaiian burials in this instance violated [Hawaii Revised Statutes (HRS)] § 6E-43 and [Hawai'i Administrative Rules (HAR)] § 13-300-36" (Count 5); (6) The GGP Appellees "propose to remove iwi, which will irreparably injure the iwi and relief is needed pursuant to HRS § 6E-13" (Count 6); and (7) The DLNR and/or BLNR Chairperson engaged in improper decision-making in authorizing the removal of many inadvertent discoveries. The Second Amended Complaint prayed for relief including: (1) a declaration that the BLNR Chairperson's decision to deny Kaleikini's request for a contested case hearing is invalid; (2) order that a contested case hearing be held; (3) declare that the removal of iwi violates the Hawai'i Constitution, the public trust, Kaleikini's fundamental rights, statutes, and regulations; (4) reverse the DLNR's decision on the burial treatment plan for the Project; (5) declare that the DLNR's and/or BLNR Chairperson's decisions authorizing the removal of inadvertently discovered burial remains are invalid; (6) enjoin the disinterment of iwi; and (7) order that any iwi that have been removed be reinterred in the same place from where they were removed.

[3] The Honorable Glenn J. Kim presided.

II.

On March 4, 2009, Kaleikini filed a notice of appeal in the Instant Action. On May 8, 2009, the GGP Appellees filed a "Notice of Filing of Bankruptcy Case for [the GGP Appellees] and Automatic Stay of Proceedings" (Notice of Automatic Stay). The Notice of Automatic Stay advised that on April 16, 2009, the GGP Appellees had filed petitions seeking bankruptcy protection under Chapter 11 of Title 11 of the United States Code and that the filing of the petitions stayed any new or further action against the GGP Appellees. Pursuant to the Notice of Automatic Stay, the proceedings in this appeal were stayed. See Hawai'i Rules of Appellate Procedure (HRAP) Rule 54(c) (2010) ("The appellate court shall not consider motions or requests for relief during the pendency of the bankruptcy.")

While this appeal was stayed, the Hawai'i Supreme Court, on August 18, 2010, issued its opinion Kaleikini v. Thielen, an appeal arising out of the Contested Case Action. Although concluding that Kaleikini'a appeal was moot, the supreme court held that the question presented, which concerned the availability of judicial review of an agency's denial of a request for a contested case hearing relating to the removal of Native Hawaiian burial sites, was a question of great public importance that fell within the public interest exception to the mootness doctrine. Kaleikini, 124 Hawai'i at 13, 237 P.3d at 1079. The supreme court held that Kaleikini had been entitled to a contested case hearing and that the circuit court erred in dismissing Kaleikini's appeal for lack of subject matter jurisdiction. Id. at 27, 237 P.3d at 1093.

III.

HRAP Rule 54(b) (2010) imposes an obligation on each party to the appeal to notify the appellate court of the lifting or termination of a bankruptcy stay. HRAP Rule 54(b) provides:

> **(b) Notice.** On the lifting or termination by the bankruptcy court of a stay of proceedings pending in the Hawai'i appellate courts, each party shall file a notification thereof with the appellate court within 7 days.

4

This appeal lay dormant for a prolonged period of time because none of the parties notified this court that the bankruptcy stay had been lifted or terminated.

On March 9, 2015, this court issued an Order Regarding Status of Bankruptcy, ordering the parties to notify this court about the status of the bankruptcy. The parties filed responses on March 19, 2015, in which they agreed that the stay resulting from the GGP Appellees' filing for bankruptcy was lifted or terminated in June 2011.

On March 27, 2015, this court issued an Order to Show Cause to the parties, directing them to provide this court with information regarding:

1. When each party and its counsel learned that the bankruptcy stay was lifted or terminated;

2. What efforts were made by each party and its counsel to keep informed of whether the bankruptcy stay was lifted or terminated;

3. Why each party did not provide this court with notice as required by HRAP Rule 54(b);

4. Whether the issues on appeal remain viable; and

5. Whether, given the passage of time and lack of activity in this appeal, the appeal should be dismissed.

Each party filed a response. In general, with respect to questions 1, 2, and 3, the responses from the parties reflect that they did not make sufficient efforts to keep informed of the status of the bankruptcy stay. As a result, they did not learn that the stay had been lifted or terminated until after this court issued its March 9, 2015, Order Regarding Status of Bankruptcy, and they did not provide this court with notice that the stay had been lifted or terminated as required by HRAP Rule 54(b).

With respect to questions 4 and 5, the GGP Appellees asserted that the appeal is not viable and should be dismissed against them because: (a) the April 30, 2008, Settlement Agreement resolved all claims asserted by Kaleikini against the

5

GGP Appellees; and (b) to the extent any claims remained after the Settlement Agreement, they were discharged by the order issued in the GGP Appellees' bankruptcy.

The State argued, among other things, that the appeal should be dismissed because Count 1 of the Second Amended Complaint, which pertained to the denial of Kaleikini's request for a contested case hearing, was resolved by the Hawai'i Supreme Court's decision in Kaliekini v. Thielen, 124 Hawai'i 1, 237 P.3d 1067. As to the remaining Counts 2, 3, and 4, the State argued that the Settlement Agreement, in which the parties reached an agreement as to the disposition and treatment of the burials discovered, rendered the claims in these counts moot, and no exception to the mootness doctrine applied.

Kaleikini argued that her appeal remains viable and should not be dismissed because she has not obtained all the relief she sought and the issue of whether island burial councils must render decisions in the spirit of trusteeship is an issue of great public importance. On May 22, 2015, Kaleikini filed a "Motion to Allow the Filing of Her Opening Brief, or To Brief the Issue of Mootness" (Motion Regarding Briefing). Attached as Appendix A to the Motion Regarding Briefing was a proposed opening brief, which contained additional argument as to why this appeal should not be dismissed on the ground of mootness. Kaleikini asserted that if this court were to grant her Motion Regarding Briefing, she would submit an opening brief in a form substantially similar to the opening brief attached as Appendix A (but with all the necessary appendices).

IV.

In deciding whether to dismiss this appeal, we have considered the proposed opening brief attached to Kaleikini's Motion Regarding Briefing. We conclude that this appeal is moot, and that the exceptions to the mootness doctrine asserted by Kaleikini do not apply. We therefore dismiss this appeal as moot.

This case arises out of Kaleikini's opposition to the OIBC's decision to approve the relocation of previously identified Native Hawaiian burials and the DLNR's decision to approve the relocation of additional inadvertently discovered burials. Kaleikini filed a Second Amended Complaint seeking declaratory and injunctive relief, which contested these decisions and sought to enjoin the GGP Appellees and the State from disinterring the iwi and to require that any iwi that had been removed be reinterred back in the same location. However, pursuant to the Settlement Agreement, Kaleikini reached an agreement with the GGP Appellees and the State regarding the treatment of the burial remains, with the parties agreeing that both the previously identified and inadvertently discovered burial remains would be reinterred at a Central Burial Preservation Site or at other specific reburial sites. Based on the Settlement Agreement, the controversy underlying this case, and this appeal, is moot.

Pursuant to the Settlement Agreement, Counts 5, 6, and 7 of the Second Amended Complaint and Kaleikini's prayers for injunctive relief have been voluntarily dismissed with prejudice. The only counts on which Kaleikini retained the right to pursue an appeal are Counts 1, 2, 3, and 4. Count 1, which challenges the BLNR Chairperson's denial of Kaleikini's request for a contested case hearing, was resolved by the Hawai'i Supreme Court's decision in Kaleikini.

Kaleikini asserts that we should decide her appeal of the Circuit Court's grant of summary judgment on Counts 2, 3, and 4 based on two exceptions to the mootness doctrine: (1) the public interest exception; and (2) the exception for issues capable of repetition yet evading review. We conclude that these exceptions are inapplicable.

Counts 2, 3, and 4 allege that the disinterment of Native Hawaiian burials in this case adversely affected Kaleikini's Native Hawaiian rights and violated the Hawai'i Constitution, and that deficiencies in the OIBC's decision-making

7

constituted a breach of its public trust responsibilities and a violation of Kaleikini's fundamental rights. We conclude that Kaleikini's claims in Counts 2, 3, and 4 turn on the particular facts and circumstances of this case, and therefore, resolving these claims would not serve to provide meaningful future guidance to public officials. In addition, the supreme court's decision in Kaleikini, 124 Hawai'i 1, 237 P.3d 1067, provides assurance that the issues raised by Kaleikini in this case would not evade review in future cases. The Kaleikini decision established the right of an individual in Kaleikini's position to obtain a contested case hearing of island burial council decisions as well as to obtain judicial review of the contested case decision.

Under similar facts, we held in Brescia v. Edens-Huff, No. CAAP-11-0000013, 2015 WL 3384403 (Hawai'i App. May 22, 2015), that the public interest exception and the "capable of repetition yet evading review" exception to the mootness doctrine did not apply. In this case, there is the additional factor of the prolonged delay in the pursuit of this appeal, after the bankruptcy stay had been lifted.

Based on the foregoing, we conclude that this appeal is moot and that the exceptions to the mootness doctrine asserted by Kakeikini do not apply. Accordingly, we dismiss this appeal.

DATED: Honolulu, Hawai'i, June 10, 2015.

Chief Judge

Associate Judge

Associate Judge

8